IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

Aspen Skiing Company, LLC,

              Plaintiff,

v.

Perfect Moment LTD.,

              Defendant.

---

## COMPLAINT

---

Plaintiff Aspen Skiing Company, LLC ("ASC") brings its Complaint against Defendant Perfect Moment LTD. ("Perfect Moment"), alleging as follows.

## NATURE OF THE ACTION

This is an action for, among other things, trademark infringement, false association and/or false endorsement, and unfair competition based on Perfect Moment's repeated and continual association of its ski apparel with ASC's preeminent luxury resort and entertainment goods and services.  Perfect Moment is a ski apparel company that desires to gain a reputation for luxury lifestyle goods.  Rather than building that reputation and goodwill through its own product line, Perfect Moment attempts to appropriate ASC's world-renowned reputation and goodwill by intentionally and falsely associating itself with ASC's resorts, ASC's trademarks, and ASC's iconic ASPENX BEACH CLUB experience.  Perfect Moment's attempt to trade on ASC's reputation and goodwill deceives consumers into believing that Perfect Moment is affiliated with or endorsed by ASC, causing ASC both monetary and reputational damage.

1

Accordingly, ASC brings claims for trademark infringement in violation of 15 U.S.C. §§ 1114 and the common law of the State of Colorado, false association, false endorsement, and/or unfair competition in violation of 15 U.S.C. § 1125(a) and the common law of the State of Colorado, and deceptive trade practices in violation of the Colorado Consumer Protection Act, C.R.S. 6-1-101 et seq., alleging as follows:

## PARTIES

1.      Plaintiff Aspen Skiing Company, LLC is a limited liability company organized under the laws of the State of Colorado with a principal place of business at 117 Aspen Airport Business Center, Aspen, Colorado 81611.

2.      Upon information and belief, Defendant Perfect Moment LTD. is a company incorporated in the State of Delaware with its principal place of business at 307 Canalot Studios, 222 Kensal Road, London, United Kingdom W10 5BN.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the claims asserted under the Lanham Act pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b).

4.      This Court has subject matter jurisdiction over the remaining claims asserted in this Complaint pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy, and they are derived from a common nucleus of operative facts.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391.

6.      This Court has personal jurisdiction over Defendant Perfect Moment because Perfect Moment has continuous and systematic general business contacts with the State of Colorado.  Specifically, Perfect Moment operates a fully interactive website

2

(www.perfectmoment.com) from which it conducts business, offers for sale, and sells its goods in the State of Colorado.  Moreover, Perfect Moment purposefully directs its commercial activities into Colorado by: offering its goods in brick-and-mortar stores located in at least Vail, Aspen, and Beaver Creek, Colorado; targeting its marketing and advertising campaigns directly at Colorado consumers; and directing, hiring, and/or conducting professional photoshoots for the Perfect Moment apparel brand in at least Aspen, Colorado, thus availing itself of the privilege of conducting commercial activities within the forum state.  *See* Exhibit A.  Furthermore, the causes of action contained herein arise, at least in part, out of Perfect Moment's advertising activities conducted in the State of Colorado.  Accordingly, this Court has both general and specific personal jurisdiction over Defendant Perfect Moment.

## FACTUAL BACKGROUND

A.    **Plaintiff ASC's Famous Brands.**

7.    Plaintiff ASC owns and operates Aspen Mountain, Aspen Highlands, Buttermilk, and Snowmass, four of the world's premier ski and snowboard resorts located in Pitkin County, Colorado (collectively, the "ASC Resorts" and/or "ASC Resort Services").

8.    ASC's Resorts are famous and enjoy worldwide recognition as premier ski resorts and destinations.

9.    In addition to ski and snowboard Resort Services, ASC offers world-class events and activities, such as outdoor concerts, ski races, air competitions, signature events, outdoor markets, and music festivals (collectively, "ASC's Entertainment Services").

10.    ASC also offers for sale, sells, and advertises clothing, including ski apparel ("ASC's Ski Apparel").

11.     In relevant part, since at least as early as 1947, ASC, its affiliates, licensees, predecessors, and/or successors have sold, offered for sale, distributed, and/or advertised its Resort and Entertainment Services and Ski Apparel in interstate commerce in connection with various leaf, ASPEN, and ASPEN SNOWMASS-formative word and design marks, including but not limited to: ASPEN; ASPEN SNOWMASS;  ⬭ ;  ⬭ ASPEN SNOWMASS ;  ⬟ ; and ◇ ASPEN SNOWMASS .

12.     ASC owns valid and subsisting U.S. federal trademark registrations for various leaf and ASPEN-formative marks, in connection with, among other things, ASC's Resort and Entertainment Services and Ski Apparel.

13.     Exhibit B, incorporated herein, contains true and correct copies of the relevant U.S. federal trademark registrations, and status printouts of the pending applications, from the U.S. Patent and Trademark Office.

14.     In addition to ASC's federal registration rights, ASC also owns common law trademark rights in the various leaf and ASPEN-formative marks in connection with, among other things, Resort and Entertainment Services and Ski Apparel by virtue of ASC's use of the relevant marks in commerce since at least as early as the dates listed in Exhibit B.

15.     ASC's common law and registration rights in the ASPEN marks are collectively referred to herein as the "ASPEN Marks."

16.     Over the past 76 years, ASC has invested substantial time, money, and effort in developing consumer recognition and awareness of the ASPEN Marks, the ASC Resorts, and ASC's goods and services.  ASC has also spent extensively on the advertisement and promotion of its goods and services sold under the ASPEN Marks.  As part of its brand investment, ASC advertises its goods and services through brick-and-mortar stores, websites, emails, signage, print and digital advertisements, and social media sites nationwide.

17.     Through ASC's long and widespread use, the ASPEN Marks are widely recognized by the public as brand identifiers for ASC's luxury goods and services and have developed extensive goodwill in the market.

18.     The ASPEN, ASPEN SNOWMASS, ⟡ ; ⟡ **ASPEN SNOWMASS** ; ⬡ ; and ⬨ **ASPEN SNOWMASS** marks are well-known in connection with, at least, ski and snowboard resort services and entitled to a wide scope of protection.

19.     ASC's reputation for world-class, exclusive Resort and Entertainment Services has made the ASC Resorts a popular and highly sought-after destination for highly discriminating consumers of unique amenities and unparalleled experiences including but not limited to, celebrities and/or influencers.

20.     Accordingly, ASC offers various Entertainment Services for its discriminating clientele, including the ASPENX BEACH CLUB experience, which is a coveted, on-mountain party with champagne bottle service, cocktails, a curated menu, and rotating DJs atop Aspen Mountain.

21.     ASC's ASPENX BEACH CLUB experience features, among other things, ASC's iconic red-and-white striped cabanas and beach chairs and a red-and-white striped DJ station and bar.  Representative images of ASC's ASPENX BEACH CLUB experience are below:

 

22.     ASC's ASPENX BEACH CLUB experience is a limited, ticketed event with admission prices ranging between $50 - $450/per person/per day.

23.     ASC has invested, and continues to invest, substantial time, money, energy, and resources into developing, creating, organizing, and hosting the highly distinct and novel ASPENX BEACH CLUB.

**B.      The Defendant Perfect Moment and its Wrongful Conduct.**

24.     Perfect Moment represents that it is a luxury lifestyle clothing brand that sells, among other things, skiwear, outerwear, and activewear.

25.     Perfect Moment represents that its target demographic is characterized by relatively high affluence and either proximity to a ski area or a location with a traditional interest in skiing as a recreational activity.

26.     To market its goods, Perfect Moment represents that it intentionally targets and combines "luxury locations," such as the ASC Resorts, with celebrities and/or influencers to create a "distinct, fun, and engaging lifestyle narrative" for its brand.

27.     On or about March 2021, Perfect Moment posted several photographs on its various social media sites liberally using and displaying certain distinguishing characteristics of

6

the ASC Resorts, including but not limited to, use of the ASPEN Marks, ASC buildings, and ski

lifts and trails. Representative examples of Perfect Moment's social media posts are reproduced

below and in Exhibit C (collectively, the "First Set of Infringing Social Media Posts").



28.    Upon information and belief, Perfect Moment contacted and hired one or more of

the social media influencers depicted in the First Set of Infringing Social Media Posts to visit one

7

or more of the ASC Resorts for the purpose of promoting and/or advertising Perfect Moment apparel.

29.     Perfect Moment's target demographic would recognize the First Set of Infringing Social Media Posts as depicting ASC's Resorts.

30.     Upon information and belief, Perfect Moment intentionally chose to conduct its commercial photoshoot at the ASC Resorts to trade on the goodwill and consumer recognition associated with the ASC Resorts and distinguishing characteristics and/or trade dress.

31.     On March 25, 2021, ASC sent a cease-and-desist letter to Perfect Moment demanding that Perfect Moment stop use of the ASPEN Marks and other ASC identifying characteristics, such as ASC's ski areas and lifts, for the purpose of advertising and selling Perfect Moment apparel.  Exhibit D.

32.     Under the threat of litigation, Perfect Moment eventually removed some but not all of the Infringing Social Media Posts from its sites.

33.     At least as early as October 2023, Perfect Moment began to advertise and sell ski apparel bearing images of ASC, including but not limited to, images of ASC's iconic ASPENX BEACH CLUB experience.  Representative examples of Perfect Moment's apparel are below.

 

 

(collectively, the "Infringing Apparel").

34.     In October 2023, Perfect Moment posted several photographs on its various social

media sites of the Infringing Apparel.  In addition, Perfect Moment posted the image of ASC's

iconic ASPENX BEACH CLUB experience used on the Infringing Apparel.  Representative

examples of Perfect Moment's social media posts are reproduced below and in Exhibit E

(collectively, the "Second Set of Infringing Social Media Posts").





35.     Upon information and belief, Perfect Moment contacted and hired at least one model and/or influencer to attend ASC's ASPENX BEACH CLUB experience dressed in Perfect Moment apparel for the purpose of being photographed for the creation of the Infringing Apparel.

36.     Upon information and belief, Perfect Moment hired photographer Dede Johnston to conduct a commercial photoshoot at ASC's ASPENX BEACH CLUB experience for the purpose of creating the Infringing Apparel.

37.     Perfect Moment's target demographic would recognize the Infringing Apparel and Second Set of Infringing Social Media Posts as depicting ASC's marquee ASPENX BEACH CLUB experience.

38.     At least one Perfect Moment consumer has worn the Infringing Apparel at the ASC Resorts.



10

39.     Upon information and belief, Perfect Moment intentionally chose to conduct its commercial photoshoot at the ASPENX BEACH CLUB experience to trade on the goodwill and consumer recognition associated with ASC's Resort and Entertainment services.

40.     On October 31, 2023, ASC sent Perfect Moment a cease-and-desist letter demanding Perfect Moment remove any reference to ASC's ASPENX BEACH CLUB experience from Perfect Moment's social media sites, websites, and/or other print and digital advertising media and to cease all sale of the Infringing Apparel.  Exhibit F.

41.     Upon information and belief, Perfect Moment continually and repeatedly associates itself with the ASC Resorts and ASC's Resort and Entertainment Services for the purpose of appropriating ASC's world-class reputation and luxury lifestyle for the benefit of Perfect Moment.

42.     Perfect Moment's repeated and continual use of the ASPEN Marks and other ASC distinguishing characteristics and/or trade dress, such as ASC's ski areas, lifts, and the signature ASPENX BEACH CLUB experience, for advertisement and sale of Perfect Moment ski apparel is likely to cause consumer confusion and deception as to the source, affiliation, endorsement, and/or sponsorship of Perfect Moment's merchandise, creating the false impression that Perfect Moment is endorsed by, sponsored by, or affiliated with ASC.

43.     Despite knowing of the infringement, Perfect Moment willfully continues to advertise, promote, and sell its Infringing Apparel and continues to falsely associate itself with ASC.

44.     Perfect Moment's trademark infringement, unfair competition, false association, and false endorsement damage ASC, its customers, prospective customers, and the general public.  Among other things, Perfect Moment's conduct usurps ASC's intellectual property,

goodwill, and reputation, without authorization or compensation, and deceives customers and potential customers regarding the source and nature of Perfect Moment's goods, all of which damages ASC's reputation and relationship with its customers and business partners.

45.      The conduct complained of herein has caused and is causing irreparable harm and damage to ASC for which there is no adequate remedy at law.

46.      ASC has been injured, and will continue to be injured, in the course of its business as a result of Perfect Moment's use of the ASPEN Marks and misappropriation of ASC's distinguishing characteristics and/or trade dress unless Perfect Moment is enjoined by the Court.

**FIRST CAUSE OF ACTION**
**Federal Trademark Infringement in Violation of 15 U.S.C. § 1114**

47.      ASC incorporates by reference each and every allegation in the preceding paragraphs.

48.      The ASPEN and leaf marks used by Perfect Moment in connection with the offering, advertising, promotion, and/or sale of its apparel are identical and/or confusingly similar to the ASC's federally registered APSEN and leaf marks.

49.      Perfect Moment's use of the ASPEN and leaf marks is likely to cause confusion or mistake, or to deceive consumers and prospective consumers as to the origin, sponsorship, association, or approval of the goods provided by Perfect Moment, or to cause confusion or mistake or to deceive relevant consumers as to whether Perfect Moment's apparel originates from, or is affiliated with, sponsored by, or endorsed by ASC.

50.      The conduct complained of herein has been without authorization or consent of ASC and has damaged, is damaging, and is likely to continue to damage ASC in an amount to be proved at trial.

51.     Perfect Moment has acted with knowledge of ASC's ownership of the ASPEN and leaf marks and with deliberate intention or willful blindness to unfairly benefit from the goodwill associated therewith.

52.     Upon information and belief, Perfect Moment intends to continue its infringing acts unless restrained by the Court.

53.     The conduct complained of herein constitutes a violation of 15 U.S.C. § 1114 and has caused and is causing irreparable harm and damage to ASC for which there is no adequate remedy at law.

## SECOND CAUSE OF ACTION
### Unfair Competition, False Association, and/or False Endorsement in Violation of 15 U.S.C. § 1125(a)

54.     ASC incorporates by reference each and every allegation in the preceding paragraphs.

55.     Perfect Moment's misappropriation and use of the ASPEN Marks and ASC's distinguishing characteristics, as described herein, in connection with the offering, advertising, promoting, and sale of Perfect Moment apparel is likely to cause confusion or mistake, or to deceive relevant consumers and prospective consumers as to the affiliation, connection, origin, sponsorship, nature, association, or approval of the goods or commercial activities provided by Perfect Moment, and are intended, and are likely to cause relevant consumers to believe in error that Perfect Moment's apparel has been authorized, sponsored, approved, endorsed, or licensed by ASC.

56.     Perfect Moment's conduct, as set forth herein, is made in commerce in connection with Perfect Moment's commercial advertising and/or in promotion of its goods.

57.     Perfect Moment's conduct misrepresents the nature, characteristic, endorsement, sponsorship, affiliation, and/or quality of Perfect Moment's goods.

58.     The conduct complained of herein has been without authorization or consent of ASC and has damaged, is damaging, and is likely to continue to damage ASC in an amount to be determined at trial.

59.     Upon information and belief, Perfect Moment did the aforementioned acts with knowledge, in willful disregard of ASC's rights, and with an intent to trade on ASC's reputation and goodwill.

60.     The conduct complained of herein constitutes a violation of 15 U.S.C. § 1125(a) and has caused and is causing irreparable harm and damage to ASC for which there is no adequate remedy at law.

### THIRD CAUSE OF ACTION
### Common Law Trademark Infringement

61.     ASC incorporates by reference each and every allegation in the preceding paragraphs.

62.     Perfect Moment's use of the ASPEN Marks in connection with the offering, advertising, promotion, and/or provision of its ski apparel is confusingly similar to ASC's ASPEN Marks.

63.     Such use is likely to cause confusion, mistake, and/or deception of relevant consumers and prospective consumers.

64.     The conduct complained of herein has been without authorization or consent of ASC and has damaged, is damaging, and is likely to continue to damage ASC in an amount to be determined at trial.

65.     The conduct complained of herein has caused and is causing irreparable harm and damage to ASC for which there is no adequate remedy at law.

66.     On information and belief, the aforesaid conduct was undertaken willfully with full knowledge ASC's use of the ASPEN Marks and with the intention of causing confusion, mistake or deception.

**FOURTH CAUSE OF ACTION**
**Common Law Unfair Competition**

67.     ASC incorporates by reference each and every allegation in the preceding paragraphs.

68.     On information and belief, Perfect Moment's ski apparel has been advertised, promoted, offered, and/or sold in connection with the ASPEN Marks and/or ASC's distinguishing characteristics, such as ASC's buildings, ski lifts and trails, and ASPENX BEACH CLUB experience, with full knowledge of ASC's prior use of the ASPEN Marks for the same or similar services and ASC's rights and interests in its distinguishing characteristics with the intent to trade on ASC's goodwill and reputation.

69.     Perfect Moment has unfairly competed with ASC by creating the impression among relevant consumers that the goods offered by Perfect Moment are licensed by, sponsored by, originated with, endorsed by, and/or are otherwise affiliated with ASC, or that the sources of the goods offered and sold by Perfect Moment are affiliated with or associated with ASC, when Perfect Moment's goods have no connection with or authorization from ASC.

70.     Perfect Moment has misappropriated ASC's valuable goodwill and public recognition of the ASPEN Marks and ASC's distinguishing characteristics, as alleged herein,

which has been developed over a long period of time by ASC, and Perfect Moment has unlawfully benefited and been unjustly enriched by such activities.

71.     Perfect Moment's continued use and misappropriation of the ASPEN Marks and ASC's distinguishing characteristics, as alleged herein, in connection with Perfect Moment's apparel constitutes unfair competition under the common law of the State of Colorado.

72.     This use has injured ASC's business reputation and has caused, and will continue to cause irreparable harm, damage, and injury to ASC unless restrained or enjoined by the Court.

## FIFTH CAUSE OF ACTION
### Deceptive Trade Practices under Colorado Consumer Protection Act

73.     ASC incorporates by reference each and every allegation in the preceding paragraphs.

74.     Perfect Moment's trademark infringement and misappropriation of ASC's distinguishing characteristics, as described above, which were conducted in the course of Perfect Moment's business, constitute passing off, making false representations as to the source, sponsorship, endorsement, approval, or certification of services, making false representations as to affiliation, connection, endorsement, or association with or certification by another, and other unfair, deceptive, deliberately misleading and false acts and practices, in violation of the Colorado Consumer Protection Act, Colorado Revised Statutes § 6-1-101, et seq.

75.     Perfect Moment's acts significantly impact the public as actual or potential customers of ASC and/or as actual or potential customers of Perfect Moment's business.

76.     Perfect Moment committed these acts willfully, and with intent to deceive consumers and cause consumer confusion, mistake, and deception.

77.     Perfect Moment's activities have caused actual damage to ASC, and unless enjoined, will continue to cause irreparable damage to ASC.  ASC lacks an adequate remedy at law.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**

78.     ASC incorporates by reference each and every allegation in the preceding paragraphs.

79.     At ASC's expense, Perfect Moment has benefited from its wrongful and unauthorized use of the ASPEN Marks and ASC's distinguishing characteristics, as alleged herein, and its usurpation of ASC's reputation and goodwill.  Perfect Moment has not paid any compensation to ASC in return for those benefits.

80.     It would be unjust to allow Perfect Moment to retain the profits it has received from the use of the ASPEN Marks and ASC distinguishing characteristics without compensation to ASC.

**SEVENTH CAUSE OF ACTION**
**Misappropriation of Business Value**

81.     ASC incorporates by reference each and every allegation in the proceeding paragraphs.

82.     Perfect Moment has wrongfully misappropriated ASC's valuable goodwill and public recognition of the ASPEN Marks and ASC's distinguishing characteristics, as alleged herein, which have been developed over a long period of time through ASC's substantial effort, time, money, and skill.

83.     Perfect Moment has wrongfully misappropriated the labor, time, money, skill, and resources ASC has invested in developing, creating, organizing, and hosting the highly distinct

and novel ASPENX BEACH CLUB experience by photographing the event and placing the image on Perfect Moment ski apparel.

84.     Perfect Moment has enjoyed substantial reputational and economic benefit from the unfair appropriation of ASC's reputation, goodwill, and ASPENX BEACH CLUB experience without compensation to ASC.

85.     ASC has suffered and continues to suffer commercial harm as a result of Perfect Moment's misappropriation of ASC's business value.

**REQUEST FOR RELIEF**

WHEREFORE, ASC respectfully requests that judgment be entered in its favor and against Perfect Moment as follows:

A.     Preliminarily and permanently enjoining Perfect Moment, and its directors, officers, agents, servants, employees, successors and assigns, and all individuals acting in concert or participation with them from (i) any further infringement of the ASPEN Marks, (ii) unfairly competing with ASC, and (iii) misappropriating ASC's business value;

B.     Directing Perfect Moment and its directors, officers, agents, servants, employees, successors and assigns, and all individuals acting in concert or participation with them to deliver up to ASC for destruction or other disposition, within thirty days of entry of final judgment, any and all infringing materials, including but not limited to, marketing materials, signage, print advertisements, product packaging, photographs, Infringing Apparel, and other materials used by or in Perfect Moment's possession that display the ASPEN Marks and/or otherwise misappropriate ASC's distinguishing characteristics and/or trade dress;

C.  For an award of Perfect Moment's profits and ASC's damages in an amount to be determined at trial for trademark infringement under 15 U.S.C. § 1114(a);

D.  For an award of Perfect Moment's profits and ASC's damages in an amount to be determined at trial for false association and/or false endorsement and unfair competition under 15 U.S.C. § 1125(a);

E.  For an award of costs incurred by ASC in this action;

F.  Trebling the amount of the award made herein to deter in the future Perfect Moment's willful, intentional, and bad faith conduct;

G.  For an award of attorneys' fees, costs, and disbursements incurred in this action based on Perfect Moment's willful, intentional, and bad faith conduct; and

H.  Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff ASC demands a trial by jury on all issues so triable.

Dated:  December 20, 2023                    Respectfully submitted:

QUARLES & BRADY LLP

*/s/ Ian L. Saffer*
Ian L. Saffer
Kate Bohmann
8210 Southpark Terrace
Littleton, CO 80120
(303) 268-0066
Ian.Saffer@quarles.com
Kate.Bohmann@quarles.com

*Attorneys for Plaintiff Aspen Skiing Company, LLC*